**STONEHILL COMMUNICATIONS, INC., Plaintiff,**

v.

**John MARTUGE, New York Area Director of United States Customs Service, Defendant.**

**No. 80 Civ. 6794.**

United States District Court, S. D. New York.

April 24, 1981.

Clark, Wulf, Levine & Peratis, New York City, for plaintiff; Leon Friedman, New York City, of counsel.

John S. Martin, Jr., U. S. Atty., S. D. New York, New York City, for defendant; Nancy E. Friedman, Asst. U. S. Atty., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

This is a case of first impression involving the interpretation of § 601(a) of the Copyright Act of 1976,[1] the "manufacturing clause." Plaintiff is the publisher of "World Guide to Nude Beaches and Recreation," a book describing (1) the attractiveness of the life style found on and associated with nude beaches and (2) where to find such beaches. More than half of the book consists of photographs depicting the life style at nude recreation areas in the United States and throughout the world; the remainder is text, mostly descriptions of nude recreation areas, their facilities, and how to get to them. Written by an American author but printed in Italy, it was deemed by an official of the United States Customs Service to violate § 601(a) and thus to be ineligible for copyright protection under the Copyright Act.

Section 601(a) provides:

Prior to July 1, 1982, and except as provided by subsection (b), the importation into or public distribution in the United States of copies of a work consisting preponderantly of nondram[a]tic literary material that is in the English language and is protected under this title is prohibited unless the portions consisting

---

1. 17 U.S.C. § 601(a).

of such material have been manufactured in the United States or Canada.

This is the latest version in a series of "manufacturing clauses" that have been a part of American copyright law since 1891. From the beginning, the essential purpose of the clause has been "protectionist"—it is designed to protect the American printing industry from the competition of foreign printers. Generally, the legislation has been opposed by writers and publishers.

█ Section 601(a), which was the subject of considerable attention throughout deliberations on passage of the Copyright Act of 1976, substantially liberalized previous clauses. The hearings before the congressional committee at which were presented the conflicting views of interested parties, indicates that there was an awareness that no sound principle justified permanent continuance of the clause, except its "protectionist" aspect, and that even as to this element its effectiveness was questioned. In consequence, the section was passed in its present form but with an expiration date of July 1, 1982.[2] Presently, the copyright office is studying the clause with a view to guiding Congress on whether to extend it beyond that date. Inasmuch as the clause was the subject of considerable attention by Congress and was passed in order to fulfill its economic objectives and despite the recognized objection that it is a burden on American authors, plaintiff's contention on argument of these motions that the clause should not be enforced is without merit. To accept this position would be tantamount to repeal by judicial decision.

The issue is one of statutory construction. That issue is what the word "preponderantly" in the statute means when a book consists of both English-language, nondramatic literary material (subject to the clause) and also pictorial matter (exempt from the clause). The statute is silent as to this type of combination book, and the legislative history, while not silent, is ambiguous. Moreover, the Customs Service, which is statutorily directed to enforce the manufacturing clause,[3] has not formulated any guidelines or regulations applicable in this kind of case. Rather significantly, the Customs agent who here made the determination states, "In cases where no practices and procedures have been established, I render opinions, based on my experience and research, as to what the appropriate practice and procedure should be."

The Customs Service professes to follow the vague instructions of the legislative history, which directs that the relative "importance" of the literary and pictorial portions governs. Thus, "where the literary material in a work consists merely of a foreword or preface, and captions, headings, or brief descriptions or explanations of pictorial, graphic or other non-literary material, the manufacturing requirement does not apply in whole or in part ... [because] the non-literary material clearly exceeds the literary material in importance."[4] On the other hand, if the nonliterary material "merely illustrates" the literary material, then the text is more important regardless of the relative amount of space each takes up.[5] In that case, the textual portion is subject to the clause, though the pictorial portion may still be manufactured abroad.

The legislative history abounds with conflicting assumptions. It, on the one hand, explicitly notes that the term "literary material" does not "connote any criterion of literary merit or qualitative value."[6] On the other hand, it also describes an approach requiring a judgment by a governmental official as to when books containing

---

2. H.R.Conf.Rept. No. 94–1733, 94th Cong., 2d Sess. 80; S.Rep. No. 94–473, 94th Cong., 1st Sess. 148.

3. 17 U.S.C. § 603.

4. H.R.Rept. No. 94–1476, 94th Cong., 2d Sess. 166–67, *reprinted in* [1976] U.S.Code Cong. & Ad.News 5659, 5782–83.

5. *Id.* at 167, [1976] U.S.Code Cong. & Ad.News at 5783.

6. *Id.* at 166, [1976] U.S.Code Cong. & Ad.News at 5782.

a combination of literary and pictorial material are "preponderantly ... literary material" and hence subject to the clause—that is, the "importance" test. No objective criteria are proferred to guide this decision; there is no indication, for example, as to whom the portions must be "important," or in what ways.

■ The assertion of unfettered discretion on the part of the Customs Service to determine what is "important" in a book, based on its "accumulated experience," [7] not only does not provide American authors and publishers with any realistic way of determining if a book will be subject to the clause, but it also is unnecessary to effectuate the purpose of the clause. That purpose is purely economic in support of the American printing industry; it is to require certain kinds of books to be manufactured in the United States or Canada in order to qualify for American copyright protection. The problem, then, is what test is to be applied to determine when material consisting of both exempt and nonexempt components is subject to the clause. In the absence of congressional or duly authorized guidelines, the answer is an objective test—in this instance, a "mechanical" one.

■ Objective guidelines will further the statutory purpose while affording authors and publishers means for ascertaining what must be done to ensure copyright protection in advance of publication. In the absence of any other standards, the Court holds that a book "consists of preponderantly non-dram[a]tic literary material ... in the English language" when more than half of its surface area, exclusive of margins, consists of English language text. In this case, though there is a slight disagreement as to the precise figures, both parties agree that pictures comprise more than half of the surface area. Thus, plaintiff's book is not subject to the manufacturing clause and is entitled to be distributed within the United States with copyright protection.

■ This case is a prime example of the problems of allowing an administrative agency to exercise uncontrolled discretion in determining what is important in a book—in this instance, as already noted above, by the judgment of a single Customs official's "opinion" as to what the appropriate practice and procedure should be.

The defendant goes to great lengths to dissect the book. He argues that the theme of the book is discoverable by reference to the text alone, that the absence of labels and captions demonstrates that the photos are merely illustrative and thus belies plaintiff's position that they are "more important" than the text. "If plaintiff seriously sought to render the book a 'preponderantly' non-literary work, the title, let alone the format, undoubtedly would have focussed on the pictures, with the text being only supplementary. The 'World Guide' ... is an obvious example of a catalogue that is illustrated with photographs." [8] Besides making what should be a simple inquiry unduly complicated, this approach ignores the obvious fact that the photographs form the very substance of the book; they are of major importance in conveying a sense of what "nude beaches" are. Further, they are clearly a factor in increasing sales. Indeed, a ready response to defendant's position can be that one picture is worth a thousand words. If that rule were applied, it is beyond dispute that the book is "preponderantly" of non-literary material that exceeds the textual material in "importance."

The lack of objective standards is emphasized by the affidavit of the Customs official who made the judgment here at issue. There are obviously any number of interpretations one could make about what is "important" in a book. Such a vague standard leaves authors and publishers without any guide while not providing any significant advantage to printers, the intended beneficiaries of the clause.

Under the circumstances, the Customs Service's ruling is arbitrary and capricious

---

7. Deft's Memorandum of Law, at 11.

8. *Id.* at 10–11.

and not in accordance with the law.[9] Plaintiff's motion for summary judgment is granted; defendant's motion for summary judgment is denied.

So ordered.

9.  5 U.S.C. § 706(2)(A); *see Morton v. Ruiz*, 415 U.S. 199, 238, 94 S.Ct. 1055, 1076, 39 L.Ed.2d 270 (1974) (for agency interpretation of statute to be granted, deference it must be consistent with congressional purpose).